IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RAYMOND RODRIGUEZ,

       Plaintiff,

v.                                   CV 13-0978 WPL

CAROLYN W. COLVIN, Acting Commissioner
of the Social Security Administration,

       Defendant.

MEMORANDUM OPINION AND ORDER

     Raymond Rodriguez filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments on March 24, 2011. (Administrative Record ("AR") 179, 186.) He alleged that he had been disabled from November 15, 2010,[1] due to cirrhosis of the liver, hepatitis, herniated discs, chronic arthritis, and mental impairments. (AR 213.) Administrative Law Judge ("ALJ") Ben Willner held a hearing on Rodriguez's application on October 2, 2012. (AR 11.) He denied Rodriguez's application, determining that he was not under a disability as defined by the Social Security Act and therefore not entitled to benefits. (AR 22.) Rodriguez requested review by the Appeals Council, but that request was denied, making the ALJ's decision the final decision of the Social Security Administration ("SSA"). (AR 1-3.)

     Rodriguez sought a review of the SSA's decision (Doc. 1) and filed a motion to reverse and remand for rehearing (Docs. 21, 22). The Acting Commissioner of the SSA

---

[1] It appears that the SSA has previously denied DIB payments to Rodriguez. (AR 209-10.) References made to any medical documents or claims dating from before November 15, 2010, are done for historical reasons and are not intended to reopen any prior claim.

("Commissioner") filed a response. (Doc. 23.) Rodriguez did not file a reply. Having read and carefully considered the entire record and the relevant law, I grant Rodriguez's motion and remand this case to the SSA for proceedings consistent with this opinion.

## STANDARD OF REVIEW

In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is only a scintilla of evidence supporting it. *Hamlin*, 365 F.3d at 1214 (quotation omitted). However, substantial evidence does not require a preponderance of evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *See Hamlin*, 365 F.3d at 1214 (quotation omitted). I may reverse and remand if the ALJ has failed "to apply the correct legal standards, or to show us that []he has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall*, 561 F.3d at 1051-52; 20 C.F.R. §§ 404.1520, 416.920 (2014). If a finding of disability or nondisability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three

2

steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, he is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### Factual Background

Rodriguez, age fifty-four, is a U.S. Army veteran who has previously worked as a mail driver, a machine operator, a sheet metal worker, and a temporary laborer. (AR 214, 226.) He last worked as a home care provider until November 15, 2010, which he lists as his potential disability onset date. (AR 209, 214.) His date last insured was September 30, 2011. (AR 209.)

Much of the medical evidence addresses Rodriguez's claims of mental impairment. However, because I determine that remand is appropriate on other grounds, I do not address these alleged mental impairments in detail except where necessary.

The bulk of medical evidence provided by Rodriguez consists of notes from U.S. Veterans Affairs ("VA") treatment centers in Los Angeles, California; Loma Linda, California; and El Paso, Texas. (AR 309-531, 537-645, 672-706, 712-43.) Although the vast majority of these records concern Rodriguez's treatment for opioid and alcohol dependence, other records indicate amputation of a fingertip after a spider bite led to infection (AR 364), treatment for

chronic hepatitis and cirrhosis (*e.g.*, AR 685), and treatment for mood disorders (*e.g.*, AR 626-27). Shortly before Rodriguez applied for DIB and SSI payments, medical staff at the El Paso VA center recorded his weight as 214 pounds. (AR 630.) The records from this visit do not expressly list a diagnosis of obesity, but a nurse discussed the health risks of that disease with Rodriguez and unsuccessfully attempted to refer him to a weight management treatment program. (AR 633.) He complained of joint pain at the time, but records show that he had a normal gait and was capable of ambulating over one hundred feet without assistance. (AR 629.)

Rodriguez applied for DIB and SSI payments on March 24, 2011. (AR 179, 186.) In his function report submitted approximately one month later, Rodriguez said that his typical day involved helping his mother, caring for his dog, tending to his garden, preparing meals, cleaning the house, and reading or watching some television. (AR 228.) However, he complained that he suffered from chronic arthritis and herniated discs, and the associated pain made it difficult for him to shave, bend over, lift heavy objects, walk, or drive. (AR 229-31, 233.) He also alleged that his mental impairments left him depressed and antisocial and caused him to struggle with concentration and memory. (AR 233.) A third-party function report from Rodriguez's sister was generally consistent with Rodriguez's own report. (AR 236-43.)

On May 10, 2011, nonexamining agency consultant Allen Gelinas, M.D., completed a physical RFC evaluation of Rodriguez, relying primarily on medical evidence from the Los Angeles, Lomas Linda, and El Paso VA centers. (AR 646-53.) Dr. Gelinas noted Rodriguez's claims of herniated discs and other back problems, but he observed that the medical evidence did not discuss any of these issues and that recent records showed that Rodriguez possessed normal gait and ambulation without assistance. (AR 647-48.) While also recording Rodriguez's claims of significant exertional, postural, and manipulative limitations, Dr. Gelinas stated that

Rodriguez's function report "informs of no significant personal care limitations" and that Rodriguez was able to care for his mother and participate in hobbies like gardening. (AR 648.)

Dr. Gelinas determined that Rodriguez could occasionally lift fifty pounds and frequently lift twenty-five pounds, with no additional limitations on pushing and pulling, and he found that Rodriguez could stand, walk, and/or sit with normal breaks for about six hours in an eight-hour workday. (AR 647.) With respect to postural limitations, Dr. Gelinas concluded that Rodriguez could frequently climb stairs and ladders, balance, stoop, kneel, crouch, and crawl. (*Id.*) He assigned no manipulative limitations except to note that Rodriguez's fingertip amputation left him with limited fine manipulation. (AR 649.) Dr. Gelinas found no visual, communicative, or environmental limitations. (AR 649-50.) He concluded that Rodriguez's statements regarding the severity of his limitations "appear significantly disproportionate w[ith] medical findings" in the record. (AR 651.)

A nonexamining agency psychiatrist also completed a psychiatric review technique and mental residual functional capacity assessment one week later. (AR 654-70.) For present purposes, it is enough to note that the psychiatrist concluded that Rodriguez suffered from affective and substance addiction disorders, but he found no more than mild or moderate functional limitations and no extended episodes of decompensation. (*Id.*)

On May 20, 2011, the SSA reached an initial determination that Rodriguez was not disabled. (AR 68-70.) In his notes, Dr. Gelinas concluded that Rodriguez was "an obvious denial at Step 5." (AR 69.)

The following month, Rodriguez met with a social worker at the El Paso VA center to discuss an assisted housing program. (AR 694.) Rodriguez told this social worker that he was able-bodied and physically capable of employment, but he claimed he was ultimately unable to

work due to his many VA appointments. (*Id.*) VA center records from several weeks later mentioned Rodriguez's claims of joint pain but also his continued ability to ambulate normally without assistance. (AR 690.)

Rodriguez requested reconsideration, providing a new function report and new records from the El Paso VA center. (AR 73, 251-66, 672-706.) Nonetheless, the SSA affirmed the initial determination in August 2011. (AR 71-90.) In doing so, the reviewing physician opined that while Rodriguez was unable to perform his past relevant work "as he describes it," he would be able to perform such work "as it is customarily performed in the national economy." (AR 76.)

Rodriguez continued to see physicians at the El Paso VA center for cirrhosis (*e.g.*, AR 736, 763), mental impairments (*e.g.*, AR 765), and other issues (*e.g.*, AR 722-25). In early March 2012, M. Basel Aswad, M.D., examined Rodriguez due to his complaints of moderate lower back pain and diagnosed lumbar strain. (AR 759-60.) Two weeks later, Dr. Aswad completed a physical capacity evaluation form in which he assigned more restrictive exertional, postural, and environmental limitations than did Dr. Gelinas. (AR 711.)

In May 2012, Rodriguez visited the emergency room at Mimbres Memorial Hospital complaining of pain and swelling in his lower extremities, saying that this pain made it difficult to walk. (AR 739.) Rodriguez told medical personnel there that he had no back pain, no extremity pain, and no joint pain. (*Id.*) Rodriguez was diagnosed with pedal edema and prescribed Lasix. (AR 740.)

Rodriguez visited Dr. Aswad again two weeks later, this time citing leg swelling and extreme back pain (10 on a scale of 1 to 10); he also stated that the pain was almost halved when he used the painkiller Tramadol. (AR 761.) Dr. Aswad again diagnosed lumbar strain and opined that Rodriguez "cannot work or make a living because of his medical condition." (AR 762.)

## HEARING TESTIMONY

On October 2, 2012, the ALJ held a videoconference hearing at which both Rodriguez and a vocational expert ("VE") testified. (AR 26; *see* AR 11.) Rodriguez was represented by an attorney and assisted by a paralegal. (AR 26, 30.) Rodriguez testified that he currently weighed 230 pounds, and he noted a slight increase in weight recently. (AR 33-34.) He stated that his last job was as a home care provider for his uncle, his mother, and a family friend, for which the state of California allowed him to collect income. (AR 36-38.) He claimed that he moved with his mother to Deming so that his sister could help him care for their mother, as he was unable to lift her or bathe her himself. (AR 39.)[2]

Rodriguez said that he does not drive anymore, that his attorney drove him to the hearing, and that his impairments forced him to stop and stretch at the halfway point between his home in Deming and the hearing in El Paso. (AR 34-35.) When he needs to pick up groceries, his mother drives. (AR 40.) He will walk a quarter of a mile to the library twice a month, but he has to stop and catch his breath when doing so. (AR 42.) Rodriguez testified that he can prepare meals, that he spends his days reading and watching television, that he does his own chores, and that he does not garden or work in the yard. (AR 40-41, 43.) He claimed that he cannot lift anything more than ten pounds without pain, that his back goes out when he shaves, and that he sometimes falls over when walking due to back pain. (AR 43-44.) He further said that he suffers from trouble breathing due to chronic obstructive pulmonary disease. (AR 49.) He acknowledged substance abuse issues but claimed he had "been doing well for the last 10 years, 12 years." (AR 51-52.)[3]

---

[2] Rodriguez has previously told medical providers that he moved to Deming "to get a fresh start" (AR 430) and "to get away from gangs and criminal activity" (AR 566).

[3] The medical evidence suggests more recent substance abuse issues. (*See, e.g.*, AR 490-95, 589, 685.)

After the ALJ and Rodriguez's attorney finished their questions, the ALJ spoke to the VE, Judith Beard, regarding Rodriguez's past work history and his ability to work in the future. (AR 54-65.) The VE first classified Rodriguez's past work as a machine operator, a sheet metal worker, and a home care provider under the Dictionary of Occupational Titles. (AR54-55.) The VE testified that a hypothetical person could perform all of Rodriguez's past relevant work if able to conduct medium exertional work, with postural limitations at the "frequent" level, limited to frequent fingering with the dominant hand, with the ability to handle complex instructions, to interact adequately with coworkers and supervisors, and to maintain concentration, persistence, and pace for two hours at a time. (AR 56.) Such a person could also handle all such work except the home care provider position if limited to working primarily with things rather than people. (*Id.*) Such a person could also handle the home care provider position if not limited to working with things but instead limited to light exertional work and handling only detailed (not complex) instructions. (AR 56-57.) However, that person could not perform any past relevant work if limited to only occasionally lifting items up to five pounds, never lifting objects over five pounds, standing and walking for two hours per workday, sitting for six hours per workday, and only occasional bending, stooping, crawling, and climbing. (AR 57.)

On further questioning from Rodriguez's attorney, the VE testified that a hypothetical person suffering from sporadic falls or drowsiness, and therefore unable to maintain concentration or persistence or pace for any period of time, would be unable to work. (AR 59-62.) She also testified that anyone who cannot fulfill an eight-hour workday due to state of mind or other factors would be unable to work. (AR 62-63.) On additional questioning, the VE stated that no unskilled work would be available for someone who must be allowed to sporadically stand and sit of their own volition. (AR 63.) Finally, the VE said that someone who was

8

consistently absent more than five days per month, including for reasons of doctor's appointments, would be unable to retain employment. (AR 65.)

### THE ALJ'S AND APPEALS COUNCIL'S DECISIONS

The ALJ reviewed Rodriguez's claim pursuant to the five-step sequential evaluation process. (AR 12-13.) He first determined that Rodriguez had not engaged in substantial gainful activity since his alleged onset date. (AR 13.) The ALJ then found that Rodriguez suffered from the following severe impairments: left shoulder degenerative joint disease,[4] hepatitis B and C, cirrhosis, obesity, an unspecified affective disorder, and status post amputation of the right index finger. (*Id.*)

At step three, the ALJ concluded that Rodriguez did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (AR 14.) His analysis at this step focused largely on Rodriguez's claims of mental impairment. (AR 15.) However, while not otherwise discussing Rodriguez's severe physical impairments at step three, the ALJ did note that "obesity can cause limitation of function," that no medical source had attributed additional or cumulative limitations to Rodriguez's obesity, and that he had considered the effects of Rodriguez's obesity within his RFC determination. (AR 14.)

At step four, the ALJ determined that Rodriguez possessed the RFC to perform medium work, with only frequent fingering with his dominant right hand; frequent climbing, balancing,

---

[4] In his step-three argument, Rodriguez asserts that the ALJ completely "failed to consider Plaintiff's impairment of osteoarthrosis and allied disorders, which were listed as a severe impairment by the Agency's consultant" during reconsideration of the DIB and SSI payments denial. (*See, e.g.*, AR 87.) However, "degenerative joint disease" is synonymous with "osteoarthrosis." *See* STEDMAN'S MEDICAL DICTIONARY 1282 (27th ed. 2000) (recognizing both terms as synonyms of "osteoarthritis"). Thus, to the extent that Rodriguez argues that the ALJ failed to recognize his osteoarthrosis as severe at step two, that argument is frivolous. Because I ultimately remand for other reasons at step three, I do not reach Rodriguez's osteoarthrosis argument in the step-three context.

stopping, kneeling, crouching, and crawling; understanding, remembering, and carrying out detailed but not complex instructions; making decisions, attending, and concentrating for two hours at a time; interacting adequately with coworkers and supervisors; and responding appropriately to changes in a work setting. (AR 15-16.) He then analyzed and discussed Rodriguez's applications, function reports, and testimony, as well as medical evidence from the VA, from Dr. Gelinas and other agency consultants, and from Dr. Aswad. (AR 16-19.) He made no mention of the impact, if any, of Rodriguez's obesity on his other impairments or on his RFC.

Having completed this RFC analysis, the ALJ concluded that Rodriguez was capable of performing his past relevant work as a home health companion. (AR 19.) He therefore determined, without reaching step five, that Rodriguez was not disabled under the meaning of the Social Security Act and not entitled to benefits. (*Id.*) Although Rodriguez appealed this decision, the Appeals Council found no reason to review it, thus rendering the ALJ's decision the final decision of the Commissioner. (AR 1-3.)

DISCUSSION

Rodriguez alleges numerous errors at steps three and four of the sequential evaluation process. However, because I find remand is required due to error at step three, I do not reach Rodriguez's step-four arguments.

In addition to other purported step-three errors, Rodriguez argues that while the ALJ "clearly considered" the impairment of obesity, he did not appropriately consider its impact on his other impairments when he determined that none of these impairments met or were medically equivalent to a condition listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. In his decision, the ALJ observed that "obesity can cause limitation of function," and while observing that none of Rodriguez's treating or examining medical sources had specifically attributed cumulative

limitations due to obesity, he nonetheless stated that he had considered the effects of Rodriguez's obesity and included those effects within his RFC determination. No other mention is made of Rodriguez's obesity during the ALJ's step-three analysis, and no specific medical or nonmedical evidence is cited in this discussion.

Social Security Ruling ("SSR") 02-1p[5] recognizes that while obesity is not itself a listing in Appendix 1, it may nonetheless be a factor in determining whether other severe impairments meet or equal a listing-level impairment at step three. *See* 2002 WL 34686281, at *5 (Sept. 12, 2002). "For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." *Id.* Moreover, obesity by itself may be medically equivalent to a listed impairment, such as when heightened obesity prevents effective ambulation as defined in Listing 1.00B2b. *See id.*

Step three also requires an ALJ to discuss the evidence relevant to his determination and his reasons for reaching this determination. 42 U.S.C. § 405(b)(1); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). A summary conclusion that a claimant's impairments do not meet or equal a listing-level impairment "is beyond meaningful judicial review" and must therefore be disregarded. *Clifton*, 79 F.3d at 1009. While the ALJ need not discuss every piece of evidence he relied on, the record must show that he considered all of the evidence. *Id.* (citations omitted). Still, a reviewing court must review the ALJ's decision "as a whole" in order to prevent "unwarranted remands [that would] needlessly prolong[] administrative proceedings." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 730 (10th Cir. 2005).

---

[5] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

It is true that the ALJ's analysis did not make any findings regarding the impact of Rodriguez's obesity on his step-three conclusions and did not discuss the medical evidence supporting these conclusions. Without more to justify his conclusions, the ALJ's analysis is indeed "beyond meaningful judicial review." However,

> where an ALJ provides detailed findings . . . that confirm rejection of the listings in a manner readily reviewable, requiring reversal would extend *Clifton* beyond its own rationale. Neither *Clifton*'s letter nor spirit require a remand for a more thorough discussion of the listings when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review.

*Fischer-Ross*, 431 F.3d at 734. In other words, the ALJ's decision must be considered as a whole, and the lack of detailed findings and reasoning in the ALJ's step-three analysis does not require remand if the ALJ reached appropriate findings at later stages of his review. Accordingly, the next step is to review the ALJ's step-four discussion to see if the findings in that analysis justify his step-three conclusions. *See id.*

The ALJ's evaluation of a claimant's RFC constitutes the first of three phases of the step-four analysis. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (citing *Winfrey*, 92 F.3d at 1023). SSR 96-8p requires the RFC to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence. In assessing RFC, the [ALJ] must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." 1996 WL 374184, at *7 (July 2, 1996). SSR 02-1p, in turn, requires that an assessment be made at step four "of the effect obesity has upon the [claimant]'s ability to perform routine movement and necessary physical activity within the work environment. . . . As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental

limitations." 2002 WL 34686281, at *6-7. An ALJ may "not make assumptions about the severity or functional effects of obesity combined with other impairments"; instead, the ALJ must "evaluate each case based on the information in the case record." *Id.* at *6.

An unpublished Tenth Circuit case, *DeWitt v. Astrue*, 381 F. App'x 782 (10th Cir. 2010), is on point. There, as here, the ALJ acknowledged the claimant's obesity as a severe impairment at the second step of the sequential evaluation process. *See id.* at 786. Further, the ALJ in *DeWitt* limited the claimant to sedentary work with other restrictions. *See id.* at 785. However,

> there [was] nothing in the [ALJ's] decision indicating how or whether [the claimant's] obesity influenced the ALJ in setting those restrictions. Rather, it appear[ed] that the ALJ's RFC assessment was based on "assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments"—a process forbidden by SSR 02-1p.

*Id.* (citing SSR 02-1p, 2000 WL 628049, at *6). Because of the ALJ's failure to adequately consider the claimant's obesity in relation to her other impairments and her RFC, the Tenth Circuit remanded the case. *Id.* at 786.

Here, although the ALJ stated that he had "considered the effects of [Rodriguez]'s obesity and included those effects within the [RFC] determination," he did not explain what impact Rodriguez's obesity had on this assessment, or indeed whether it had any impact on Rodriguez's RFC at all. This was error, as "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR 02-1p, 2002 WL 34686281, at *6. Because the ALJ failed to adequately address the medical and nonmedical evidence in determining Rodriguez's RFC, I cannot conclude that his decision was supported by substantial evidence at step four. Moreover, because the ALJ's step-three conclusions rely on this inadequate RFC discussion, I cannot conclude that his decision was supported by substantial

evidence at step three. Therefore, this case must be remanded to ensure compliance with SSR 96-8p and SSR 02-1p.

CONCLUSION

The ALJ erred in his review of Rodriguez's applications for DIB and SSI payments by failing to sufficiently discuss the impact of obesity on his other impairments and on his RFC. As such, I grant Rodriguez's motion to reverse, and I remand this case back to the SSA for proceedings consistent with this opinion.

IT IS SO ORDERED.

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.